286 P.2d 806

Wallace R. SMITH, d/b/a Smith Realty Co., Plaintiff and Appellant,

v.

C. Taylor BURTON, Defendant and Respondent.

No. 8302.

Supreme Court of Utah.

Aug. 1, 1955.

Dwight L. King, Salt Lake City, for appellant.

Vernon Romney, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from part of a judgment denying a $4,000 claim of plaintiff, and cross-appeal from a part awarding $2,000 to plaintiff. Denial of the $4,000 claim is affirmed and the award of $2,000 is reversed, costs to defendant.

This action is for $6,000 allegedly due for realty commissions, which amount, in plaintiff's words, was made up of "$2,000 * * * claimed under a memorandum agreement * * * marked Exh. 7" and "the balance of $4,000 * * * due under the document entitled 'Commission Agreement' which is Exh. 2." Plaintiff, therefore, relies on the terms of those instruments as constituting the integrated agreement between the parties. Its terms, consequently, are not variable, modifiable or contradictable by parol evidence.[1]

On January 31, 1953, defendant and one Elder signed an Exchange Agreement. Plaintiff brokered it. Defendant agreed to pay a commission, not on a percentage basis, as is usually the case, but in the form of deeding to plaintiff a duplex *when* the latter sold or exchanged two more duplexes, "at a net figure of $17,000 each" and that he, the defendant, would "accept reasonable terms." On February 17, a more detailed "Commission Agreement," *prepared by plaintiff*, was executed. Defendant again agreed to transfer the duplex *when* the broker sold or exchanged two other duplexes. The language, the subject of this action, is as follows:

"The conveyance shall be made * * * when the sale or exchange has been * * * effected * * * at a selling or exchange price of *$17,000 net* to said First Party (defendant) * * *. It is further agreed that in the event the Broker shall *sell* First Party's duplexes for *a sum* greater than *$17,000 net* * * * the Broker shall be entitled to retain such *excess of money* as a further commission * * *

---

1. Williston, Contracts, Revised Ed., Vol. 3, Sec. 631, p. 1813 et seq.

for his efforts." (Italics and brackets ours.)

■ This agreement, *prepared by plaintiff*, is construable most strongly against him. Obviously it supersedes the previous agreement as to commissions, and it prevails where inconsistent.

■ The lower court found that under the terms of this agreement commissions, in addition to the duplex, were payable if and when the two remaining duplexes were sold *for cash*. We agree, concluding that no other reasonable construction can be placed on the specific language used, else the italicized words would have no meaning. So concluding, we cannot embrace plaintiff's contention that since defendant placed a listed value of $19,000 on his duplexes, plaintiff should receive the $2,000 differential between that valuation and the $17,000 *cash* mentioned in the commission agreement, when subsequently defendant exchanged the duplexes for property of one Toone under another exchange agreement.

■ Plaintiff contends that irrespective of all this, he is entitled to the $2,000 awarded him by the trial court, *under the terms of a memorandum agreement* signed by defendant on the day that the Toone exchange agreement, involving the exchange of the duplexes, was consummated. The memorandum agreement under which plaintiff claims the $2,000 awarded by the court, subject of cross-appeal, reads:

"As my commission for services in connection with that Exchange Agreement dated May 1, 1953 (with Toone) I will take ½ of rental fee for pastures for the 1953 season until a total of $2,000 is paid, together with sorrel horse, saddle and bridle. *Smith to rent pastures*." (Italics supplied.)

Although the evidence shows that Smith did not rent the pasture, the lower court found that at the time the memorandum was signed the parties understood that defendant would pay $2,000 whether Smith rented the pasture or not. It is impossible to determine how such finding could be reached, except by considering parol evidence, since such finding is the antithesis of the plain terms of the memorandum. The record reflects that over the repeated objections of counsel, considerable parol evidence was admitted, including a highly self-serving document which plaintiff prepared after the memorandum was executed, and which, if defendant had signed, would have bound the latter to an agreement to pay the $2,000 which the court found was the agreement. Defendant denied any such agreement.

There was testimony by plaintiff to the effect that defendant failed to repair a fence so that plaintiff could not rent the pasture. Plaintiff did not plead excuse for nonperformance by defendant's hindrance or prevention, [2] asked for no amendment of his pleadings to conform to such proof, and

2. Williston, Contracts, Revised Ed., Vol. 3, Sec. 677, p. 1952.

64

the lower court obviously was unimpressed with such theory since it made no finding to such effect.

Here, we think, is a case where a litigant probably would have fared better had he employed counsel to prepare his contracts before rather than after becoming a bone of contention.

McDONOUGH, C. J., and CROCKETT, WADE, and WORTHEN, JJ., concur.